# UNITED STATES DISTRICT COURT
## DISTRICT OF NEBRASKA

| | |
|---|---|
| **Kevin French, Stephen Jordan, Ronald Cross, Richard Burke**, on behalf of themselves and others similarly situated,<br><br>Plaintiffs<br><br>v.<br><br>**Triage Staffing Inc.**,<br><br>Defendant | Case No.: |

## CLASS ACTION COMPLAINT

### PARTIES

1. Kevin French is an individual domiciled in Hampton, New Hampshire.

2. Stephen Jordan is an individual domiciled in Exeter, New Hampshire.

3. Ronald Cross is an individual domiciled in Epping, New Hampshire.

4. Richard Burke is an individual domiciled in Nottingham, New Hampshire.

5. Triage Staffing, Inc. is a corporation with a principal place of business at 11133 O Street, Omaha, NE 68137.

### JURISDICTION AND VENUE

6. This Court has original jurisdiction to hear the Complaint pursuant to 28 U.S.C. § 1332(a)(1).

7. Venue of this action lies in the District of Nebraska pursuant to 28 U.S.C. § 1391(a)(1).

**FACTUAL BASIS FOR CLAIMS**

8. The Defendant, Triage Staffing Inc. (hereinafter "Triage"), employs and places health care workers known as "travelers." Triage hires these "travelers" and places them to work at hospitals around the United States on a contract basis for short durations of time, often approximately 13 weeks. Such "travelers" often provide short-term staffing assistance to hospitals that Triage contracts with.

9. Upon information and belief, Triage hired one David Kwiatkowski as a traveling cardiac catheterization laboratory technician and, in March 2011, placed Mr. Kwiatkowski at Exeter Hospital in Exeter, New Hampshire.

10. After Triage placed Mr. Kwiatkowski at Exeter Hospital, Plaintiffs French, Cross, Jordan and Burke underwent procedures in the cardiac catheterization laboratory at Exeter Hospital and were exposed to hepatitis C by Mr. Kwiatkowski.

11. Upon information and belief, prior to arriving at Exeter Hospital, staff members at some of the hospitals where Mr. Kwiatkowski had previously worked reported that Mr. Kwiatkowski often told stories about himself that later proved to be false. For example, Mr. Kwiatkowski frequently claimed that:

    a. he played baseball at the University of Michigan;

    b. his fiancée had died under tragic circumstances; and

    c. he suffered from cancer.

12. Upon information and belief, prior to coming to Exeter Hospital, Mr. Kwiatkowski was terminated by another hospital for falsifying information on a timesheet.

13. Upon information and belief, prior to coming to Exeter Hospital, on at least two occasions, needles were found in a restroom outside the cardiac catheterization laboratory at a hospital where Mr. Kwiatkowski worked. After Mr. Kwiatkowski left that hospital, no further such incidents occurred.

14. Upon information and belief, prior to coming to Exeter Hospital, Mr. Kwiatkowski was involved in a drug diversion incident when he worked as a contract employee in 2008:

    a. A hospital employee observed Mr. Kwiatkowski enter an operating room, lift his shirt, put a syringe in his pants, move his arms quickly near a medication cart, and exit the room. A subsequent review of the narcotics in the room showed that a syringe containing Fentanyl, a potent opioid narcotic with a high abuse potential, was missing and that it had been replaced by a syringe containing a different liquid (which was later found not to be Fentanyl).

    b. Mr. Kwiatkowski was acting erratically and was sweating.

    c.    Mr. Kwiatkowski agreed to be searched shortly after the discovery and three empty syringes bearing Fentanyl labels were found on his person. An empty morphine sulfate syringe and a needle were later found in his locker.

    d.    A drug test found Fentanyl and other opiates in Mr. Kwiatkowski's system.

15. Upon information and belief, Mr. Kwiatkowski tested positive for hepatitis C in June 2010.

16. Hepatitis C is a blood-borne viral disease that is primarily transmitted by exposure to infected blood. Left untreated, hepatitis C causes inflammation of the liver and can lead to cirrhosis and/or liver cancer.

17. Upon information and belief, in October 2011, after Mr. Kwiatkowski had been working in its cardiac catheterization laboratory for six months, Exeter Hospital hired Mr. Kwiatkowski as a full time cardiac catheterization laboratory technician.

18. Upon information and belief, in or about May 2012, medical staff at Exeter Hospital learned that several patients had tested positive for hepatitis C. Further investigation revealed that all of these patients had undergone recent procedures in Exeter Hospital's cardiac catheterization laboratory.

19. Upon information and belief, in June 2012, Mr. Kwiatkowski fled the state of New Hampshire and was subsequently admitted to a psychiatric hospital in Massachusetts.

20. As of July 13, 2012, the New Hampshire Department of Health and Human Services has announced that 32 people, including Mr. Kwiatkowski and Mr. Fowler, associated with the Exeter Hospital cardiac catheterization laboratory have tested positive for hepatitis C.

21. Over 1,200 patients, associated with Exeter Hospital in New Hampshire have been tested and 32 patients have been identified who are infected with the same strain of hepatitis C as Mr. Kwiatkowski.

22. On July 24, 2012, the New Hampshire Department of Health and Human Services announced that over 6,000 more Exeter Hospital patients will be tested for hepatitis C.

23. Upon information and belief, Triage has placed Mr. Kwiatkowski in hospitals in several other states.

24. Upon information and belief, hundreds of patients in Kansas, Maryland, and Georgia have begun the testing process.

25. Upon information and belief, Michigan, Arizona and New York are currently identifying hospitals where Mr. Kwiatkowski may have worked.

26. On July 19, 2012, the United States District Court for the District of New Hampshire issued a warrant for Mr. Kwiatkowski's arrest. The warrant lists the following offenses:

    a.    violation of 21 U.S.C. 843(a)(3), acquiring a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge;

    b.    violation of 18 U.S.C. 1365(a)(3), tampering with a consumer product and the container for such product that affected interstate and foreign commerce with reckless disregard for the risk that another person will be placed in danger of death or bodily injury and under circumstances manifesting extreme indifference to such risk, resulting in serious bodily Injury to another individual

### COUNT ONE – NEGLIGENT HIRING

27. The Plaintiffs repeat and re-allege each of the allegations contained in paragraphs 1 through 26 as if fully set forth herein.

28. Triage owed a duty of care to the Plaintiffs to protect them against harm from its employee, Mr. Kwiatkowski. Triage is responsible for protecting members of the public, including the Plaintiffs, that Mr. Kwiatkowski would be expected to encounter.

29. Triage failed to exercise reasonable care when it hired Mr. Kwiatkowski in view of all of the circumstances surrounding the job Mr. Kwiatkowski was to perform at Exeter Hospital and other hospitals. Triage failed to exercise the degree of care required related to the severity of risk to the Plaintiffs.

30. Triage knew or should have known of Mr. Kwiatkowski's likelihood of causing harm to the Plaintiffs when it hired Mr. Kwiatkowski. Triage failed to conduct a reasonable investigation that could have found Mr. Kwiatkowski's likelihood of causing harm to the Plaintiffs.

31. Triage's breach of its duty was the proximate cause of the Plaintiffs' injuries.

### COUNT TWO – NEGLIGENT RETENTION

32. The Plaintiffs repeat and re-allege each of the allegations contained in paragraphs 1 through 32 as if fully set forth herein.

33. Triage owed a duty of care to the Plaintiffs to protect them against harm from its employee, Mr. Kwiatkowski. Triage is responsible for protecting members of the public, including the Plaintiffs, that Mr. Kwiatkowski would be expected to encounter.

34. Triage failed to exercise reasonable care in view of all of the circumstances surrounding the job Mr. Kwiatkowski was to perform at Exeter Hospital. Triage failed to exercise the degree of care required related to the severity of risk to the Plaintiffs.

35. Triage knew or should have known of Mr. Kwiatkowski's likelihood of causing harm to the Plaintiffs when it retained Mr. Kwiatkowski. Triage failed to conduct a reasonable investigation that could have found Mr. Kwiatkowski's likelihood of causing harm to the Plaintiffs.

36. Triage's breach of its duty was the proximate cause of the Plaintiffs' injuries.

## COUNT THREE – NEGLIGENT SUPERVISION

37. The Plaintiffs repeat and re-allege each of the allegations contained in paragraphs 1 through 36 as if fully set forth herein.

38. Triage owed a duty of care to the Plaintiffs to protect them against harm from its employee, Mr. Kwiatkowski. Triage is responsible for protecting members of the public, including the Plaintiffs, that Mr. Kwiatkowski would be expected to encounter.

39. Triage failed to exercise reasonable care in view of all of the circumstances surrounding the job Mr. Kwiatkowski was to perform at Exeter Hospital. Triage failed to exercise the degree of care required related to the severity of risk to the Plaintiffs.

40. Triage knew or should have known of Mr. Kwiatkowski's likelihood of causing harm to the Plaintiffs when it supervised Mr. Kwiatkowski. Triage failed to conduct a reasonable investigation that could have found Mr. Kwiatkowski's likelihood of causing harm to the Plaintiffs.

41. Triage's breach of its duty was the proximate cause of the Plaintiffs' injuries.

## COUNT FOUR – NEGLIGENT ENTRUSTMENT

42. The Plaintiffs repeat and re-allege each of the allegations contained in paragraphs 1 through 41 as if fully set forth herein.

43. Triage owed a duty of care to the Plaintiffs to protect him against harm from its employee, Mr. Kwiatkowski. Triage is responsible for protecting members of the public, including the Plaintiffs, that Mr. Kwiatkowski would be expected to encounter.

44. Triage failed to exercise reasonable care in view of all of the circumstances surrounding the job Mr. Kwiatkowski was to perform at Exeter Hospital. Triage failed to exercise the degree of care required related to the severity of risk to the Plaintiffs.

45. Triage knew or should have known of Mr. Kwiatkowski's likelihood of causing harm to the Plaintiffs when it entrusted Mr. Kwiatkowski. Triage failed to conduct a reasonable investigation that could have found Mr. Kwiatkowski's likelihood of causing harm to the Plaintiffs.

46. Triage's breach of its duty was the proximate cause of the Plaintiffs' injuries.

## COUNT FIVE - INTENTIONAL MISREPRESENTATION

47. The Plaintiffs repeat and re-alleges each of the allegations contained in paragraphs 1 through 46 as if fully set forth herein.

48. Triage made intentional misrepresentations concerning Mr. Kwiatkowski's qualifications and employment record.

49. Such misrepresentations allowed Mr. Kwiatkowski to pose a danger to patients, including the Plaintiffs, who were treated in Exeter Hospital's cardiac catheterization laboratory during all relevant times.

50. As a result of Triage's misrepresentations, the Plaintiffs suffered injuries.

## DEMANDS FOR RELIEF

51. The Plaintiffs pray that class certification be granted and for a judgment in their favor, awarding them damages, including compensatory and punitive damages, interest, costs, expenses and attorneys' fees incurred in prosecuting this action, as well as pre-judgment and post-judgment interest, in an amount to be determined at trial as to Count One.

52. The Plaintiffs pray that class certification be granted and for a judgment in their favor, awarding them damages, including compensatory and punitive damages, interest, costs, expenses and attorneys' fees incurred in prosecuting this action, as well as pre-judgment and post-judgment interest, in an amount to be determined at trial as to Count Two.

53. The Plaintiffs pray that class certification be granted and for a judgment in their favor, awarding them damages, including compensatory and punitive damages, interest, costs, expenses and attorneys' fees incurred in prosecuting this action, as well as pre-judgment and post-judgment interest, in an amount to be determined at trial as to Count Three.

54. The Plaintiffs pray that class certification be granted and for a judgment in their favor, awarding them damages, including compensatory and punitive damages, interest, costs, expenses and attorneys' fees incurred in prosecuting this action, as well as pre-judgment and post-judgment interest, in an amount to be determined at trial as to Count Four.

55. The Plaintiffs pray that class certification be granted and for a judgment in their favor, awarding them damages, including compensatory and punitive damages, interest, costs, expenses and attorneys' fees incurred in prosecuting this action, as well as pre-judgment and post-judgment interest, in an amount to be determined at trial as to Count Five.

## CLASS ACTION AVERMENTS

56. The class is so numerous that joinder of all members is impracticable:

57. There are questions of law and/or fact common to the class:

   a. All of the members of this class are patients who had invasive diagnostic and/or therapeutic procedures in cardiac catheterization laboratories, operating rooms, and/or intensive care units at hospitals where Triage placed Mr. Kwiatkowski.

58. The claims or defenses of the representative parties are typical of the claims or defenses of the class.

59. The representative parties will fairly and adequately protect the interests of the class.

60. Prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications.

## JURY CLAIM

The plaintiff claims a trial by jury.

Respectfully submitted,
Robert Fowler,
By his attorney,

/s/ Domenic Paolini

Domenic Paolini
BBO # 643215
**PAOLINI & HALEY PC**
28 State Street, 37th Floor
Boston, MA 02109-1775
(617) 951-0300
dpaolini@paoliniandhaley.com

Dated: July 24, 2012